the children clothing worth about five dollars each. Other than this he had made no contribution to the support of his family. Y. E. Bargeron, counsel for the plaintiff, testified that as counsel for the Savannah & Atlanta Railway he was familiar with the shortage claimed against Mrs. Hobbs; that the shortage was caused by the mistaken kindness of Mrs. Hobbs, while agent for the express company and railroad, in taking notes and checks for freight charges and C. O. D. shipments, and the givers of the notes and checks failing in business and being unable to pay them, and this amount was charged up to Mrs. Hobbs.

The trial judge passed an order requiring the defendant to pay temporary alimony from the date of the separation until the date of the hearing in the sum of $40 per month, a total sum of $533.33 to be paid within 15 days, and ordering that the defendant pay within 15 days $100 as attorney's fees and that he pay the further sum of $25 per month, beginning 30 days from date of the order, to the plaintiff as temporary alimony for herself and said minor children until the final decree of the court, and ordering that the "restraining order and ne exeat originally granted in this case be and remain in full force until the final disposition of this case, or until further order of this court." This order is excepted to on the grounds that the same is contrary to the evidence and unsupported by the evidence; because there was no proof of the value of the property described in the plaintiff's petition, and no proof of the ability of the defendant to pay gross alimony between the date of the separation and the date of the hearing; because there was no proof of the value of the services of counsel; and because there was no proof to authorize the continuance of the restraining order and ne exeat originally granted. The defendant also assigned error on the refusal of a continuance.

*R. A. Moore,* for plaintiff in error.

*Y. E. Bargeron* and *R. B. Chastain,* contra.

---

## CAMPBELL *v.* HALLMAN.

1. The court did not err in permitting the witnesses to testify as set out in division 1 of the opinion.
2. The court did not err in overruling the motion to nonsuit the case.
3. It was not error to refuse to permit the defendant to introduce in evi-

dence the subsequent deed from the common grantor to J. C. Deal, the third party, for the purpose of showing that the common grantor did not intend to convey the land in controversy, in the northwest corner of lot No. 69, to the plaintiff; it appearing that the common grantor was not in possession of the land in controversy at the date of the second deed.

4. The court did not err in overruling the motion for continuance, as set out in ground 5 of the motion for new trial. Movant had not complied with the rule with reference to continuances, as contained in the Civil Code (1910), § 5705.

5. The charges of the court as set out in grounds 6 and 7 of the motion for new trial are not erroneous for any reason assigned.

6. The evidence authorized the verdict.

No. 4073. JULY 19, 1924.

Complaint for land. Before Judge Highsmith. Appling superior court. November 3, 1923.

Pennie Blanton Hallman brought complaint for a certain described tract of land against Florence Campbell, in which the plaintiff claimed title to the land as being seized in fee, and prayed to recover the land and $25 a year mesne profits. It was alleged in the original petition and amendments thereto that both plaintiff and defendant hold under a common grantor, Riley Crosby. The abstract of title relied upon by the plaintiff is a warranty deed from Riley Crosby, of Appling County, to Pennie Blanton, dated June 3, 1905, the deed being properly witnessed and recorded. Plaintiff bought from Riley Crosby 25 acres of land, more or less, of lot No. 69 in the 4th district of Appling County, for the consideration of $50, copy of the deed being attached to the petition. At the time of the purchase plaintiff took with the agreement and understanding that the land was located in the northwest corner of the lot. She was a young girl in her teens and inexperienced, and could scarcely read and write, and, not knowing the legal effect of any kind of written documents, was unable to prepare a deed. Riley Crosby was an aged and infirm man, and was also ignorant as to the preparation of legal documents, and could scarcely read and write. He secured the services of a scrivener by the name of P. M. Carter, who was unlearned, to prepare the deed of conveyance; and both Crosby and plaintiff being unable to determine and interpret land deeds, after the deed had been executed and delivered to plaintiff she did not read said deed and the description in the same, and by mistake and accident on the part of the scrivener the description in the deed as to boundaries

was inadvertently written "Boardtree Branch on the south" and "Long Flat on the east." Plaintiff did not know until just prior to the death of Riley Crosby, the grantor, in 1916 or 1917, that the description in the deed should have been "Long Flat on the south" as constituting the southern boundary, and "Boardtree Branch on the east" as constituting the eastern boundary, instead of the boundaries given in the deed; and to this extent the deed should be reformed. All the other description is accurate and correct as to location, lot number, district, and number of acres, and it should be in the northwest corner of the lot. During the last part of the lifetime of Riley Crosby, just after the discovery of the mistake in the boundary of the land in the deed, plaintiff sought to have him correct the same, and he agreed to do so, but did not, owing to his feeble condition, stating that he wanted to get some one to prepare the deed who was familiar with the preparation of such papers, and he procrastinated, and soon grew more infirm and never made the change, and died before doing so. Plaintiff alleges that she was not guilty of any laches; she sought, immediately upon the discovery of the errors in the deed, to have them corrected, but was unable to do so, for the reasons alleged. It is further alleged, that defendant is not a bona fide purchaser of the land conveyed in the deed; that she knew about the error stated in the deed prior to her purchase of the same, and attempted to rent the boxes to work for turpentine on this land, well knowing what the intention and purpose of the deed was and what it conveyed, and she knew that the land was that of the plaintiff, who had part of it cleared for cultivation after she purchased from Riley Crosby; that the mistake was mutual one between plaintiff and Riley Crosby, and the boundaries were not made purposely. By amendment the plaintiff added another ground to her abstract of title, viz., a quitclaim deed from J. C. Deal to Pennie Blanton Hallman, dated Jan. 4, 1918, and recorded on March 11, 1919; and an amendment making Mrs. D. B. Tomberlin, I. R. Crosby, and Sallie Crosby, the only heirs at law of Riley Crosby, parties defendant.

The defendant answered, admitting possession of 235 acres, more or less, of the west side of lot of land No. 69 in the 4th district of Appling County, which includes the 25 acres of land in controversy sought to be described in plaintiff's deed from Riley

Crosby, but denying that any land is described in the deed, and that any part of said lot extends to Boardtree Branch on the south or to Long Flat on the east. She denies that plaintiff has any title to any tract of land, but defendant claims title to all of the west part of said lot, amounting to 235 acres, including the lands sought to be described by plaintiff. Defendant admits receiving the profits of 235 acres of land of the west part of said lot since 1913, but denies owing any rents or profits to plaintiff, and denies that they are of the value of $25 a year as to the part sought to be described by the plaintiff. Defendant has improved all of the 25 acres of said lot, amounting to $5 per acre, which defendant prays be set off against the alleged profits; defendant admits that she has title emanating from Riley Crosby, but denies that plaintiff has any title emanating from Riley Crosby, or that plaintiff has title to any lands in the possession of defendant. She denies that paragraph 5 of plaintiff's petition and exhibits thereto set forth any abstract of title to any part of the lands of said lot now in the possession of the defendant; for that the description is fatally defective and describes no land at all.

On the trial of the case the jury returned the following verdict: "We, the jury, find in favor of the plaintiff for the land in dispute, to wit, 25 acres, more or less, in the northwest corner of lot of land No. 69 in the 4th district of Appling County, extending to Boardtree Branch on the east and to Long Flat on the south, subject to payment for improvements. We find the defendant entitled to recover from the plaintiff for improvements in the sum of $1,000. We find the value of the land without improvements to be $500. We find plaintiff entitled to recover rents in the sum of none." The defendant filed a motion for new trial on various grounds, which was overruled, and she excepted.

*H. J. Lawrence,* for plaintiff in error.

*H. L. Williams,* contra.

HILL, J. (After stating the foregoing facts.)

1. The first ground of the amended motion for new trial complains that the court erred in permitting, over objection of the defendant, Mary Jane Blanton to testify as follows: "I am the Mary Jane Blanton mentioned in the deed from Riley Crosby to Pennie Blanton. I remember when I bought the land on Boardtree Branch. I do not remember whether it was in the northeast

or northwest corner of the lot. I do not remember the number of the lot. All I remember is that it was on Boardtree Branch. It was on the way we went to fishing. Mr. Crosby showed it to me, and I had some logs rolled on it. I own some more land, and this was next to it, adjoining it. We paid Mr. Crosby $50 for the land; paid it in money. He did not give us the land. He partly raised Pennie, and we kept house for him and cooked for him. I bought the 25 acres from Mr. Crosby. I picked cotton, got the money, and paid him the cash for it. We done this cooking for him. He showed me the land. I don't know the lot or numbers or where the lines were. I know Long Flat and Boardtree Branch, but do not know whether east or west. Mr. Campbell tried to lease the timber once on the lands." This testimony was objected to on the ground that Riley Crosby was dead, and since Mary Jane Blanton was a grantee in the deed from Riley Crosby to Pennie Blanton, dated June 3, 1905, Mary Jane Blanton would be an incompetent witness against the defendant as to transactions between Mary Jane Blanton and Riley Crosby, deceased. The second ground of the amendment to the motion for new trial complains that the court permitted Pennie Blanton Hallman, over objection of the defendant, to testify as follows: "I am the plaintiff in this case. This is the deed" (which was exhibited to her). "I saw the land, but was ignorant, and did not know there was anything wrong about the deed until a short time before Mr. Crosby died. He promised to make me a new deed and correct the error in my deed, but never did before he died. He was feeble, and it was difficult for him to go out and get some one to write the deed. There was a mistake in the deed from him to me June 3, 1905, as Boardtree Branch is east of the land intended to be conveyed and not south of it, and Long Flat is south of it and not east of it, in the northwest corner. I was a young girl about sixteen years old when the deed was made, and did not know about what made good deeds, and did not know there was any mistake in the deed until about the year 1916. I told Mr. Crosby about the mistake in my deed, and he said he [would] correct it several times, but died before he ever corrected it. I saw the land many times. Mr. Crosby lived near my mother and me, and we kept house for him, and he showed us the land. We paid him $50 for it, and he made the deed. Boardtree Branch

is not south of this land, but it is east of it; and Long Flat is south of the land, and not east of it. I know where both branches are, and have seen them many times. I know the land. It is in the northwest corner of lot No. 69. I understood that it was in the corner of the lot. I did not know then what direction north or east was, as I was a young girl. I never discovered the mistake until we tried to sell the land." The objection urged against this evidence was the same as that stated in the first ground of the motion for new trial. The exception to Civil Code § 5858, declaring who are competent to testify, is as follows: "1. Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person." The suit was instituted by Pennie Blanton Hallman, the immediate grantee of Riley Crosby, against Florence Campbell, a remote transferee of Riley Crosby, to recover the 25 acres of land conveyed to the plaintiff by Riley Crosby, and to reform the deed on account of a mistake in the boundaries to the land conveyed. We are of the opinion that the section of the code cited does not render the plaintiff or her mother incompetent witnesses in behalf of the plaintiff. *Smith* v. *Duhart*, 152 *Ga.* 554 (4) (110 S. E. 301), and cases cited. The witness whose evidence is objected to by the plaintiff in error was not the "opposite party" within the meaning of section 5858, par. 1, of the code, supra, who, by the provisions of that section shall not be admitted to testify in his own favor against a deceased person. The personal representatives of a deceased person, Crosby, are not defending the present suit, although his only heirs at law were made parties defendant, in order to have the deed reformed. Furthermore, these heirs at law, as the record shows, executed a quitclaim deed in 1918 to the plaintiff to the land in controversy, after the death of the father, giving the correct boundaries, and in accordance with the prayer of plaintiff's petition for the reformation of the deed made by Riley Crosby to the plaintiff.

2. The fourth ground of the motion for new trial assigns error because the court refused to permit the defendant, Florence Campbell, to introduce in evidence a certain deed from Riley Crosby

to J. C. Deal, dated January 18, 1913, conveying 25 acres of land, more or less, in lot No. 69 in Appling County, "lying and being in the southwest corner of said lot . . and bounded as follows: north by Long Flat, on the east by Boardtree Branch, south and west by original land lines; and above-described land intended to be deeded to Pennie Blanton on June 3, 1905, but by mistake of designation deed was made to lands in the northwest corner of said lot; she having made deeds to J. C. Deal to the same, this deed is made in correction of that deed." The defendant sought to show by this deed that Riley Crosby never intended to convey to Pennie Blanton any land in the northwest corner of lot No. 69 in the 4th district of Appling County, and that he intended to convey 25 acres, more or less, in the southwest corner of said lot, if he intended to convey anything at all. Defendant contends, that, since the court permitted the plaintiff to introduce testimony, over the objection of defendant, tending to show that Riley Crosby intended to convey lands in the northwest corner, but made a deed that was fatally defective in description, the real intention of Riley Crosby over his own signature in a deed of correction should have been permitted to be shown to the jury by the defendant, and the refusal of the court to permit the defendant to introduce the deed from Crosby to Deal was erroneous and prejudicial to the defendant. We are of the opinion that the court did not err in rejecting this evidence, it appearing that the common grantor was not in possession of the land at the date of the second deed, which was eight years after the execution of the first.

3. The sixth ground of the motion for new trial complains that the court erred in charging the jury as follows: "If you should find that the plaintiff is entitled to recover, and Mrs. Campbell in good faith improved the land, then you should find according to a verdict which I have prepared for you in case you should so find, which verdict is as follows: 'We, the jury, find in favor of the plaintiff for the land in dispute, to wit, 25 acres, more or less, in the northwest corner of lot of land No. 69 in the 4th district of Appling County, extending to Boardtree Branch on the east and to Long Flat on the south, subject to payment for improvements. We find the defendant entitled to recover from the plaintiff for improvements in the sum of $—. We find the value of the land without improvements to be $—. We find plaintiff

entitled to recover rents in the sum of $—.'" It is insisted that it is erroneous for the trial judge to prepare a verdict "in his own handwriting or any other writing, merely leaving blanks to be filled out by the jury, even though the court should charge the jury that they should not use such verdict unless they found that the plaintiff was entitled to recover." It is contended that the preparation of such a written verdict and delivery of the same to the jury by the presiding judge, although unintentionally done for such purpose, is within itself suggestive to the jury that such a verdict is the one proper for them to render, and is equivalent to an intimation by the court of his opinion as to what has been proved in the case. We are of the opinion that the charge of the court excepted to is not erroneous for the reason assigned, and does not require a new trial. If counsel deemed the questions submitted to the jury to be insufficient to cover the case, they should have requested that additional issues be submitted. *McWhorter* v. *Ford,* 142 *Ga.* 554 (5 *a*) (83 S. E. 134).

4. The seventh ground of the amended motion for new trial complains that the court erred in charging the jury, "not in exact language, but in principle, the following proposition: that if the jury found that the deed from Riley Crosby to Pennie Blanton was intended by the parties to convey 25 acres, more or less, in the northwest corner of lot of land No. 69 in the 4th district of Appling County, extending to Boardtree Branch on the east and Long Flat on the south, and that by mistake and inadvertence Boardtree Branch was referred to as being on the south, whereas in fact it was located on the east, and that Long Flat was referred to as being on east, whereas in fact it was on the south, and that in fact Boardtree Branch on the east and Long Flat on the south would form boundaries of approximately 25 acres in the northwest corner in connection with the other boundaries called for by the deed, and that it was the intention of the parties by said deed to convey such tract, but inadvertently and by mistake Boardtree Branch was erroneously referred to as being on the south and Long Flat as being on the east, you would be authorized to find in favor of the plaintiff if otherwise entitled to recover, without reference to the question of reformation, or the necessity of reforming the deed." This charge is not open to the objections: "(a) Because it does not state the law and the principles of equity

properly in regard to defects in deeds. (b) Because it relieves the plaintiff from carrying the burden in regard to reformation of instruments on account of mistakes, and puts the defendant on undue burden of proof in sustaining her contentions that the deed is fatally defective in description of the lands sought to be conveyed. (c) Because the jury was thus instructed that they might return a verdict upholding a deed that is fatally defective in description, without the necessity of reformation of · such deed. (d) Because the defendant insists, and the plaintiff admitted in her pleadings, that her deed was fatally defective and needed reformation before recovery could be had on it, to wit, the deed from Riley Crosby to Pennie Blanton; and the jury should have been instructed the law of the reformation of instruments and the rules of evidence concerning the proof in such cases. (e) Because the jury was thus instructed that it was their duty to pass on the intentions of the parties where a mistake in the deed was admitted by the plaintiff, and to render a verdict, if they saw fit, on a deed that was admitted to be defective in description by plaintiff. (f) Because when the words 'more or less' occur in a deed after the number showing the acreage, it is necessary for the boundary lines to be properly and clearly shown in the deed, so as to show the body of land conveyed. There being no boundary lines shown on two sides of the tract of the deed recited, it was error for the presiding judge to instruct the jury that they might swap boundary lines against the necessity of reformation of the deed, and thus make a good deed out of a bad deed, and still not reform it."

5. The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*